UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

CARLOS LOPEZ,

Defendant.

16 Cr. 317-22 (PAE)

OPINION AND ORDER

---

PAUL A. ENGELMAYER, District Judge:

This order resolves a motion by defendant Carlos Lopez for compassionate release, pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion, but solely on grounds of failure to exhaust administrative remedies.

## I.   Background

The Court has earlier denied two motions by Lopez for compassionate release: on June 10, 2020, *see* Dkt. 640 ("First CR Decision"), and August 11, 2021, *see* Dkt. 715 ("Second CR Decision"). This order incorporates by reference the discussions there of the case background and the Court's bases for denying relief.

In brief, on November 8, 2017, Lopez pled guilty to participating in a narcotics conspiracy, in violation of 21 U.S.C. § 841(b)(1)(C) and § 846, in which he had supplied crack cocaine to the Low Rider Brims, a drug trafficking organization centered in the Diego Beekman Houses in the Bronx. First CR Decision at 1. The parties stipulated to a Sentencing Guidelines range of 120 to 150 months' imprisonment, based on an offense level of 27 and a criminal history category of V. *See* Dkt. 552 at 23–24. On January 30, 2018, the Hon. Katherine B. Forrest, to whom the case was assigned, adopted those calculations, denied Lopez's request for a downward variance, and sentenced Lopez principally to a term of 120 months' imprisonment.

Dkt. 578. In imposing sentence, Judge Forrest emphasized the seriousness of Lopez's sales of a "toxic" drug and his "prolonged history of drug dealing," which put him one point away from qualifying as a career offender, and the relative culpability of co-defendants, while acknowledging Lopez's family situation and hard upbringing. *See* Dkt. 586 at 13–20.

Lopez's first compassionate release motion was filed on March 29, 2020, early in the COVID-19 pandemic. *See* Dkt. 631. It noted his adverse health conditions, including asthma and a heart murmur. *Id.* at 4–6. In denying release, the Court emphasized that Lopez had served only about 36 months of the 120-month sentence, and found that release would disserve the 18 U.S.C. § 3553(a) factors as balanced by Judge Forrest, including the interests of just punishment and specific deterrence that largely undergirded the sentence. First CR Decision at 5–6. The decision, the Court stated, was without prejudice to Lopez's right to re-apply for compassionate release later in the service of his sentence. *Id.* at 6.

Lopez's second compassionate release motion was filed on August 3, 2021. Dkt. 713. It noted the difficult conditions in which he had been held during the pandemic at the Metropolitan Detention Center ("MDC") in Brooklyn, to which he had been transferred shortly before the pandemic to facilitate a resentencing proceeding relating to his terms of supervised release. The motion also argued that a sentence reduction was supported by the endorsement by the Justice Department of the pending EQUAL Act, which would eliminate the Sentencing Guidelines disparity between crack cocaine and powder cocaine. In denying release, the Court noted that Lopez had served only about 48 months of his 120-month sentence, such that release would disserve the § 3553(a) factors as balanced by Judge Forrest. Second CR Decision at 1. The Court declined to give effect to the EQUAL Act, as this legislation was not yet law, while noting that, were the statute enacted, it might "eventually provide a separate source of support for a

2

sentence reduction in this case." *Id.* at 3. To the extent Lopez claimed a continuing risk from COVID-19 while in prison, the Court rejected that argument, because Lopez had been offered a vaccine in January 2021, but had refused it then and since. The Court noted, however, that several factors would eventually justify some reduction in Lopez's sentence, including the unexpected hardship presented by the pandemic and the severe conditions Lopez had experienced at the MDC and at Federal Correctional Institute ("FCI") Gilmer. Thus, the Court stated: "The Court will thus entertain a renewed application for release or reduction of sentence from Lopez significantly later in his prison term." Second CR Decision at 1–2.

On January 15, 2024, Lopez, through counsel, filed the now-pending new motion for release pursuant to 18 U.S.C. § 3582(c). Dkt. 793 ("Lopez Mem."). The motion again noted the adverse prison conditions Lopez has experienced, and the Court's 2021 statement that it would be open to a renewed motion for early release based on these conditions. It also again argued that early release is consistent with the § 3553(a) factors. Lopez also made a new argument: that early release is supported by Amendment 821 to the Sentencing Guidelines, which took effect November 1, 2023. On February 5, 2024, the Government submitted a letter in opposition, arguing that Lopez had not exhausted his administrative remedies, and that the motion should be denied on the merits. Dkt. 808 ("Gov't Mem.").

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that

3

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a

district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

5

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* §1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. Application to Lopez

The Court is constrained to deny Lopez's motion for relief under § 3582(c) because he has failed to exhaust administrative remedies. In its opposition, the Government notes that Lopez has not established that he exhausted such remedies before filing the instant motion. *See* Gov't Mem. at 7. Lopez did not address the exhaustion requirement in his motion. And, perhaps tellingly, Lopez did not respond to the Government's argument that he had failed to exhaust. Exhaustion of administrative remedies is, however, mandatory before a § 3582(c) motion can be

6

granted. *See, e.g.*, *United States v. Scparta*, 567 F. Supp. 3d 416, 421 (S.D.N.Y. 2020) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies."); *United States v. Levy*, No. 16 Cr. 270 (ARR), 2020 WL 2393837, at *3 (E.D.N.Y. May 12, 2020) (same).[1]

The Court *sua sponte* considered whether Lopez's recent motion could be considered a renewal of his August 2021 § 3582(c) motion, as opposed to a new one, and whether the Court could on that basis treat the exhaustion requirement as satisfied. *Cf. United States v. Miao*, No. 15 Cr. 628 (AT), 2023 WL 5092146, at *2 (S.D.N.Y. Aug. 8, 2023). Regrettably, however, a review of the August 2021 motion reveals that Lopez did not establish there, either, that he had satisfied the exhaustion requirement. On the contrary, as the Government noted in opposing that motion, Lopez had not addressed exhaustion, and his arguments for release were different from those in his March 2020 application, as to which Lopez had exhausted his administrative remedies. *See* Dkt. 714. Citing the same case authority as it does here, the Government argued that denial of the motion therefore was compulsory. *Id.* at 7. In denying the August 2021 motion, the Court acknowledged the Government's unopposed argument that Lopez had failed to exhaust, but did not reach that ground, denying the motion on the alternative ground that Lopez's release 48 months into his 120-month sentence would disserve the § 3553(a) factors. *See* Second

---

[1] Courts have recognized limited circumstances under which the exhaustion requirement may be excused. These include where pursuing administrative remedies would be futile, either "because agency decisionmakers are biased or because the agency has already determined the issue," *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), where delay would result in "catastrophic health consequences," *id.* at 120, "where the administrative process would be incapable of granting adequate relief," *id.* at 119–20, or "where pursuing agency review would subject [a party] to undue prejudice," *id.* at 119. *See also United States v. McCarthy*, 453 F. Supp. 3d 520, 525 (D. Conn. 2020). Because Lopez has not addressed the subject, the Court cannot assume that any such circumstances excused Lopez in failing to exhaust administrative remedies here.

CR Decision at 1–2. Nothing in that decision can be read to authorize the filing of a new application without first exhausting administrative remedies.

For avoidance of doubt, had Lopez exhausted his administrative remedies, the Court would have granted his § 3582(c) motion to this extent: The Court would have reduced the imprisonment component of Lopez's sentence by three months, to 117 months' imprisonment. The Court would have done so on the grounds identified in its August 2021 decision: that Lopez experienced unexpectedly rigorous conditions of confinement during his prison term as a result of the COVID-19 pandemic, in that, in connection with the resentencing proceeding, Lopez was held in the MDC during the first 13 months of the pandemic. *See* Second CR Decision at 2; Gov't Mem. at 3–4 (representing that Lopez had been transferred to the MDC before the start of the pandemic in March 2020 and remained there through on or about April 28, 2021)

The Court has repeatedly recognized, as a basis for imposing lower sentences than otherwise would have been warranted, the harsh prison conditions at the municipal prisons at which defendants were held prior to sentencing during the first year of the pandemic, specifically the MDC and the Metropolitan Correctional Center. Numerous courts have similarly reduced sentences pursuant to § 3582(c) based, at least in part, on prison conditions during the first year of the pandemic. *See, e.g., United States v. Tellier*, No. 92 Cr. 869 (LGS), 2022 WL 1468381, at *5 (S.D.N.Y. May 10, 2022) (finding "harsh prison conditions" a factor favoring sentence reduction); *United States v. Rengifo*, 569 F. Supp. 3d 180, 197 (S.D.N.Y. 2021) (finding "unanticipated severity" of lockdown conditions a circumstance that supported early release); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) ("the pandemic, aside from posing a threat to [defendant's] health, has made [his] incarceration harsher and more punitive than would otherwise have been the case," supporting a sentence reduction). It logically

follows that Lopez's misfortune in being caught in the MDC for the grueling first 13 months of the pandemic as a result of a technical resentencing proceeding is a similar factor mitigating his overall sentence. Analyzed in terms of the Sentencing Commission's recent guidance as to § 3582(c), the Court would find the lockdowns and associated rigors experienced by Lopez in the MDC between March 2020 and April 2021 to qualify, under the catch-all provision of this guidance, as an extraordinary and compelling reason justifying a sentence reduction. *See* U.S.S.G. § 1B1.13(b)(5).[2] The Court would further find a 117-month sentence, reflecting a three-month reduction of sentence, consistent with the assembled § 3553(a) factors, including those which Judge Forrest (and this Court) have found to favor a lengthy term of imprisonment.

The Court is mindful of defense counsel's representation that the BOP has set Lopez's anticipated release date for July 2024. *See* Lopez Mem. at 1; Gov't Mem. at 6. On this premise, there is obvious urgency for the defense now to clear the exhaustion bar, to enable Lopez to gain maximum benefit from the sentence reduction that the Court stands ready to order. The Court would alternatively grant such relief forthwith upon a statement by the Government that it will waive the exhaustion requirement in this case, as it has done in some cases. *See, e.g., United States v. Mallay*, No. 02 Cr. 778 (SJ), 2021 WL 5718301, at *5 (E.D.N.Y. Dec. 1, 2021), *aff'd*, No. 21-2999, 2023 WL 408950 (2d Cir. Jan. 26, 2023); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. No. 440, 2020 WL 1673140 (S.D.N.Y. Apr. 6, 2020); *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. No. 1086 (S.D.N.Y. Apr. 10, 2020).

---

[2] The Court, however, does not find Amendment 821 to the Sentencing Guidelines to justify a reduction of sentence. As the Government notes, Lopez is not eligible for reduction of sentence under the Amendment, because the Amendment would not reduce his Sentencing Guidelines range. Gov't Mem. at 9. The Amendment also does not qualify as an extraordinary and compelling circumstance under the change-of-law provision of the Sentencing Commission's guidance, *see* U.S.S.G. § 1B1.13(b)(6), both because Lopez does not qualify for relief under that change of law, and because he has not served at least 10 years of the sentence imposed.

## CONCLUSION

For the reasons stated, the Court denies Lopez's motion for compassionate release, but stands ready to reopen and grant this motion upon a showing of administrative exhaustion or a statement by the Government that it will waive the administrative exhaustion requirement. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 793.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: March 5, 2024
      New York, New York